## Nicholas Economou v. Vermont Electric Cooperative, Inc.

[313 A.2d 1]

No. 221-72

· Present: Barney, Smith, Keyser and Daley, JJ.

Opinion Filed December 4, 1973

*Myers & Cleveland,* Essex Junction, for Plaintiff.

*Frederick J. Fayette, Esq.,* Burlington, for Defendant.

**Barney, J.** This case deals with the charges assessed by the defendant for electrical service to the plaintiff. A negligence count raised below was found wanting and is no longer an issue in the case. Findings were not asked for or made, so the review in this Court is limited to assessing the validity of the judgment as supported by the record. The defendant seeks review of an award to the plaintiff.

The matter began with a contract. The plaintiff asked for electrical service to his rural property and signed a contract with the defendant to obtain it. Under the terms of the contract the plaintiff paid $32.50 a month as a minimum monthly guarantee and received in return 1010 KWH of electricity

without extra charge. This arrangement was distinguished from the usual rates of the defendant in that $32.50 a month had to be paid no matter how far below 1010 KWH of electricity the plaintiff's consumption fell. In part, at least, this return to the defendant was to amortize the cost of extending the line to the property and installing three poles. $7.50 per month was the charge allocated to the line extension and the $25.00 balance was the electricity minimum.

The contract had a five year term, renewable thereafter from year to year unless terminated by thirty days notice by either party to the other. The plaintiff carried out the full five years, then sought to terminate by letter to the defendant. The defendant took two positions. First, it refused to view the plaintiff's letter as a notice to terminate. Second, it informed the plaintiff that, since the contract provided that the minimum charge "shall continue in effect until revised by action of the Board of Directors", that termination of the contract would not change his rate. At a much later time the defendant, on receipt of a more formal notice, did terminate the contract and place the plaintiff on its regular rate schedule. This was not the former schedule, since the company had, in the meantime, come under the regulatory authority of the public service board.

The lower court found in favor of the plaintiff. It awarded damages in a stipulated amount based on a termination of the contract as of the date of first notification by the plaintiff, with electric costs then computed on the basis of the old farm and home rate schedule in use during that period by the defendant.

It is clear from the judgment that the lower court found that the plaintiff's letter of notification to the defendant after the end of the five year contract was effective as an exercise of the right to terminate. Although the defendant contests this interpretation of the letter, it is sufficiently supported by its content and plain meaning to justify such a conclusion and we find no error.

The defendant argues more strongly, however, about the consequences of termination. It claims support from "company policy" and "usual practice" to continue to hold the plaintiff to the contractual charge in spite of termination. As

noted above, it takes the position that release from such a minimum could come about only through action of its board of directors.

In this case the rate charges were arranged between the parties by means of a written contract, duly executed. The right of the defendant's board of directors to insist on the continuance of the guaranteed rate was within, and not without, the contract. Termination of the contract extinguished that term, along with all the rest. What other arrangements might then have been arrived at, had the parties reached a new agreement by negotiation, need not be speculated about.

The presence of the written contract brought into operation the rule that testimony to add to or contradict the written provisions of a contract will not be given effect. *Hathaway* v. *Ray's Motor Sales, Inc.*, 127 Vt. 279, 282, 247 A.2d 512 (1968). The law presumes the writing to contain the whole agreement. *Wood* v. *James*, 93 Vt. 36, 40, 106 A. 566 (1918). Thus, all these claimed variations from the terms of the contract were correctly treated by the lower court as of no effect. With the termination of the contract providing for a guaranteed minimum the trial court was free to limit the allowable charges of the defendant to those applying to the electric energy furnished the plaintiff under the applicable farm and home rate schedule in evidence.

With that court persuaded that the evidence demonstrated that the published rate schedule had been made applicable, the judgment rendered was entirely proper. It is unimpeachable here.

*Judgment affirmed.*