## Kathleen W. Muir and Christopher R. Muir b/n/f Kathleen W. Muir v. Hartford Accident and Indemnity Co. and Allstate Insurance Co.

[522 A.2d 236]

Present: Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.*

Opinion Filed January 9, 1987

---

* Justice Gibson heard oral argument but did not participate in this decision.

*Manfred W. Ehrich, Jr.*, Bennington, for Plaintiffs-Appellees.

*John T. Boylan, III*, and *Scott A. Whitted* of *Kiel & Boylan*, Springfield, for Defendant-Appellant Hartford Accident & Indemnity Co.

**Allen, C.J.** This is an appeal from a judgment in favor of a mother and her son, plaintiffs-appellees, for personal injuries sustained when the car in which they were passengers was involved in a fatal accident. The trial court concluded that a provision of the host-driver's policy which reduced the uninsured motorist coverage by any amounts paid under the liability coverage was void, and allowed the mother full recovery under the liability and uninsured motorist provisions of the policy. The defendant, Hartford Accident and Indemnity Company (Hartford), appeals from that determination.[1] The judgment is affirmed.

The plaintiffs were passengers in a car which collided with another car driven by an uninsured motorist. At the time of the accident, the uninsured motorist was allegedly racing with a third car, the driver of which was insured. The plaintiffs made claims against Hartford under the liability, medical payments and uninsured motorist (UM) provisions of their host-driver's policy.

The liability and medical payment claims were settled, and the mother executed individual covenants not to sue the host-driver-insured's estate for herself, or for her son as his guardian. The agreements set forth the amount received by each plaintiff from Hartford. Hartford ultimately paid the full amount of its liability coverage in settlement of all of the claims arising out of the accident. Plaintiffs also made claims against and reached a settlement

---

[1] Upon motion by defendant Allstate Insurance Company, and without opposition by the other parties, judgment in favor of Allstate was affirmed by order of this Court.

with the third-party insured motorist. They did not seek or obtain Hartford's consent to these settlements.

Plaintiffs then brought suit against Hartford seeking payments under the UM coverage of their host-driver's policy. They also brought a separate suit against the uninsured motorist. These actions were consolidated "for a hearing on the issue of coverage." By agreement of the parties, the coverage questions were heard by the court and the issues of the liability of the uninsured motorist and the amount of damages sustained by each plaintiff were tried before a jury. The court held that the plaintiffs were entitled to payment under the UM coverage for any amount of their damages which remained unsatisfied by the liability and third-party settlements, up to the policy limit for UM coverage. The case then proceeded to trial before a jury on the issues of liability and damages. The jury concluded that the uninsured motorist was liable to the plaintiffs, and fixed the damages sustained by the mother and her son.

The amount of the judgment against the uninsured motorist was determined by subtracting the amount received by each plaintiff in settlement from the damages each was awarded by the jury. The mother's jury award was more than she had received in settlement, and the court awarded the difference to her under the UM coverage of Hartford's policy. As the son had recovered more through settlement before trial, he was awarded only "nominal damages." Hartford appeals from these judgments.

Hartford first asserts that the plaintiffs were precluded from claiming UM benefits by the negotiated settlement of the liability claims. Settlement was formalized in the covenants not to sue, which ran only to the Hartford's insured and did not purport to release Hartford. The trial court applied the well settled law of this jurisdiction governing the admissibility of parol evidence where the written instrument leaves no room for construction, and its determination that the plaintiffs did not waive their right to sue Hartford for UM coverage will not be disturbed. See *Economou* v. *Vermont Electric Cooperative, Inc.*, 131 Vt. 636, 638, 313 A.2d 1, 3 (1973).

Hartford next contends that the trial court erred in refusing to give effect to the policy terms which provide for a reduction in

UM recovery by the amount recovered under liability coverage.[2] It argues that these provisions are intended to prevent a carrier from suffering a double loss for the same injury. According to its analysis, Hartford did not owe plaintiff further payment under UM coverage because it had provided through the liability payment an amount greater than the statutory minimum for UM coverage in effect at that time under 23 V.S.A. § 801.

■    The UM coverage does not duplicate the liability coverage in the manner described by Hartford. Rather, the two coverages "are separate and distinct." *Ciecka* v. *Transamerica Insurance Group,* 81 N.J. 421, 427, 409 A.2d 272, 275 (1979). Liability coverage protects the insured against liability arising out of the ownership or use of a motor vehicle. By contrast, UM coverage protects those insured "against the unfortunate hazard presented by an injury inflicted in an accident with an irresponsible operator who is uninsured or has fled the scene . . . ." *Rhault* v. *Tsagarakos,* 361 F. Supp. 202, 205 (D. Vt. 1973). The remedial purpose of 23 V.S.A. § 941, *Goodrich* v. *Lumbermens Mutual Casualty Co.,* 423 F. Supp. 838, 842 (D. Vt. 1976), would go unfulfilled if UM coverage could be reduced by liability recovery as proposed by Hartford. A set-off of the liability recovery against the UM coverage would reduce defendant's UM liability to zero and defeat the

---

[2] Section 1 of the policy provided:
    *Limits of Liability:*
    (c) . . .

    Any amount payable under Coverage D — Uninsured Motorists because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by
    (1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured highway vehicle and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury, including all sums paid under Coverage A — Liability of the policy, and . . .

    *Trust Agreement:* In the event of payment to any person under Coverage D — Uninsured Motorists:

    (a) the company shall be entitled to the extent of such payment to the proceeds of any settlement of judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made, including the proceeds of any settlement with or judgment against a person or organization who is an insured under Coverage A — Liability of this policy;

statutory purpose of providing coverage as if all drivers had been insured. *Taylor* v. *Great Central Insurance Co.,* 305 Minn. 446, 449, 234 N.W.2d 590, 591-92 (1975); *Rhault,* 361 F. Supp. at 207.

■ Once the plaintiffs established that they were "legally entitled" to recover from the uninsured motorist, 23 V.S.A. § 941, Hartford stood "jointly liable with the uninsured motorist, or in his stead, to the extent specified in the statute . . . ." *Rhault,* 361 F. Supp. at 206. Hartford's responsibility was then to provide UM coverage, up to the policy limits provided, for the portion of the plaintiffs' total judgment that remained unsatisfied by their recovery from other sources. See *Geyer* v. *Reserve Insurance Co.,* 8 Ariz. App. 464, 467, 447 P.2d 556, 559 (1968).

■ Hartford's further contention that the court erred in holding void the policy terms providing for a reduction in UM coverage for payments received from the insured third-party motorist is similarly unpersuasive. As with a set-off for liability recovery, a reduction from UM coverage for a recovery from a third party would nullify the statutory purpose of providing coverage for that portion of plaintiffs' total injuries caused by an uninsured motorist, independent of recovery from other sources. See *Rhault,* 361 F. Supp. at 206.

Hartford's assertion that 23 V.S.A. § 941(e)[3] provides for this reduction is inapposite. Section 941(e) applies only to payments a plaintiff receives from the uninsured motorist. See *Rhault,* 361 F. Supp. at 206 n.2; see also *Wescott* v. *Allstate Insurance,* 397 A.2d 156, 168 (Me. 1979); *Finney* v. *Farmers Insurance Co.,* 21 Wash. App. 601, 615, 586 P.2d 519, 529 (1978), *aff'd,* 92 Wash. 2d 748, 600 P.2d 1272 (1979).

■ Hartford next contends that the plaintiffs' UM recovery was barred by their settlement with the insured third-party motorist without Hartford's consent. To give this effect to the policy's exclusionary clause would be contrary to the purpose of 23 V.S.A. § 941. Section 941 provides a source of compensation for

---

[3] § 941. Insurance against uninsured motorists

. . . .

(e) If payment is made under uninsured motorist coverage, and subject to the terms of that coverage, to the extent of that payment, the insurer is entitled to the proceeds of any settlement or recovery from any person legally responsible for the damage or personal injury, as to which the payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle.

an uninsured motorist's liability, and litigation involving an uninsured third-party motorist thereby assumes the same posture as any lawsuit involving multiple defendants. To permit settlement with an insured third-party to extinguish UM coverage for an uninsured motorist who is legally responsible for damages would frustrate that legislative design. *Wescott,* 397 A.2d at 167 (citing *Rhault,* 361 F. Supp. at 207). To the extent the policy's exclusionary clause is relied on to that effect, it is without force.[4]

Hartford next claims error in the court's apportionment of damages. It asserts that the court should have calculated the plaintiffs' UM recovery as a single figure rather than making a separate award for each plaintiff. Hartford entered into separate covenants not to sue with the mother and her son, however, in which the amount of liability payment apportioned to each was set forth. Hartford thus agreed to individual payments for each plaintiff, rather than a joint payment. The trial court acted consistently with Hartford's own course of dealing by computing a judgment for each plaintiff rather than treating the UM award as a joint recovery.

Hartford also asserts that the trial court erred in allowing the mother to recover the costs of her son's medical care when it entered judgment on the damages awarded by the jury. Acknowledging that a parent may recover for medical expenses arising out of an injury to a child, *Trapeni* v. *Walker,* 120 Vt. 510, 516-17, 144 A.2d 831, 835 (1958), Hartford nonetheless contends that by its terms, the UM provision of the policy covered only the mother's personal injuries, and not those of her son.

This issue was not properly preserved for appeal. Hartford first brought the matter to the trial court's attention after the jury had returned its verdict and was dismissed. No request for a jury instruction or special interrogatory directed to this issue was made, nor was there an objection on this ground to the jury instruction. A specific charge would have prompted the jury to delineate its damage award. Without this specific delineation, it is not known whether the jury awarded the medical expenses to the mother. When Hartford presented the issue, therefore, the court could only have speculated about the jury's award. The court thereby

---

[4] As noted by Judge Holden in *Rhault,* 361 F. Supp. at 207 n.3, the exclusionary clause may apply to settlement with the *un*insured motorist in order to protect the insurer's subrogation rights under § 941(e).

did not have a fair opportunity to rule upon the claim, which precludes review by this Court. *Sanville* v. *Williams*, 138 Vt. 498, 501, 418 A.2d 860, 862 (1980).

*Affirmed.*