Evarts v. One Beacon Insurance Co., No. 237-11-04 Ancv  (Reiss, J., Feb. 2, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
ADDISON COUNTY, SS.

|  |  |  |
|---|---|---|
| | ) | |
| LUCILLE EVARTS | ) | Addison Superior Court |
| | ) | |
| v. | ) | Docket No. 237-11-04 Ancv |
| | ) | |
| ONE BEACON INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |

OPINION AND ORDER

This matter comes before the Court on the parties' cross motions for summary judgment.  Plaintiff Lucille Evarts seeks enforcement of an arbitration award, awarding her $80,000 in damages from Defendant One Beacon Insurance Company under an uninsured motorist insurance policy (the "Policy").  Defendant claims that pursuant to the Policy, it is entitled to offset its payment of the arbitration award by the amount that Plaintiff has already received in workers' compensation benefits.  Plaintiff argues the offset is not authorized by Vermont law.

This case presents the following issue of law: May an insurance company offset workers' compensation benefits received by a plaintiff under a policy provision which purports to allow such offsets to the extent the workers' compensation benefits would afford the plaintiff a double recovery?  The Court answers this question in the affirmative and grants Defendant's summary judgment motion and denies Plaintiff's summary judgment motion insofar as it seeks denial of an offset, thereby holding that Defendant may offset its payment by the amount Plaintiff received in workers' compensation benefits to the extent there would be a double recovery.  The Court finds that such a

result satisfies the purpose of Vermont's Uninsured Motorist Act, 23 V.S.A. § 941 (the "Act"), "to put a covered person in the same position as if the uninsured motorist had been insured." *Landry v. Dairyland Ins. Co.*, 166 Vt. 634, 635 (1977) (mem.). Any other result would place Plaintiff in a better position than she would be in had the accident involved an insured driver.

The following facts are undisputed. As a result of an automobile accident between Plaintiff and an uninsured motorist, Plaintiff received workers' compensation benefits in the amount of $15,259.61. Plaintiff then sought coverage from Defendant under the Policy. The parties submitted the case to binding arbitration, and the arbitration board found that Plaintiff had incurred $80,000 in damages. Defendant claims it is liable for only $64,740.39 of those damages, because the Policy states that:

> [w]e will not pay for any element of loss if a person is entitled to receive a payment for the same element of loss under any of the following or similar law:
> 1. Workers' compensation law . . . .

Summary judgment is appropriate where there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). Here, the dispositive issue is one of law only, and the parties do not dispute the essential facts of the case.

In general, "[u]nless prohibited by statute or public policy, an insurer's liability is controlled by its policy provisions." *State Farm Mut. Auto. Ins. Co. v. Powers*, 169 Vt. 230, 236 (1999). Plaintiff, however, argues that the Act, which requires UM coverage in all Vermont automobile insurance policies, authorizes an offset only for an insured's recovery from an uninsured motorist and does not permit a carrier to offset its obligations as a result of an insured's recovery from sources such as workers' compensation. Section 941(e) of the Act provides that "the [UM] insurer is entitled to the proceeds of any settlement or recovery from any person legally responsible for the damage or personal injury" to the insured. 23 V.S.A. § 941(e). The Act is silent with respect to offsets of workers' compensation benefits, and it does not state that "settlement or recovery" from the tortfeasor under § 941(e) is the exclusive offset or reimbursement permitted under the Act.

The Vermont Supreme Court has stated that any policy provision "which reduces the amount of coverage mandated by statute" is void. *Sanders v. St. Paul Mercury Ins.*

*Co.*, 148 Vt. 496, 499 (1987); *see also* 23 V.S.A. § 941 ("The coverages . . . for new or renewed policies shall be not less than $50,000.00 for one person and $100,000.00 for two or more persons killed or injured.").  Plaintiff, however, will not be deprived of full coverage under the Policy for her losses.[1] The Supreme Court has described a UM carrier's obligation under the Act as follows:

---

[1] The Court does not address the question of whether a policy provision permitting an offset for workers' compensation benefits would be void in circumstances where a plaintiff does not recover all of his or her damages, although it notes that the weight of authority holds a policy offset provision void in those circumstances.

> The obligation of a UM carrier is to provide UM coverage up to the limits of its policy, for the portion of the accident victim's total judgment *that is unsatisfied by recovery from other sources*. A UM carrier is therefore entitled to reimbursement for payments it makes to an accident victim to the extent the victim's total recovery *from all sources* exceeds his or her damages.

*Bradley v. H.A. Manosh Corp.*, 157 Vt. 477, 485 (1991) (emphasis supplied). The Court's language "other sources" and "all sources" would be meaningless if it was limited to recovery from the tortfeasor. *See also Muir v. Hartford Accident & Indem. Co.*, 147 Vt. 590, 594 (1987) (holding that UM insurer's responsibility was to provide "for the portion of the plaintiffs' total judgment that remained unsatisfied by their recovery from other sources").

The Court is aware of a split in authority on this issue. Two Vermont Superior Courts, as well as a number of courts in other jurisdictions, have concluded that an offset for workers' compensation is not permissible under the Act or similar UM Acts in other jurisdictions, even where the insured receives a double recovery. *See Feeley v. Allstate Ins. Co.*, No. S89-00 Fc, slip op. at 3–7 (Jan. 8, 2004) (VanBenthuysen, J.); *Winn v. Becker*, No. S0226-90 BcC, slip op. at 9 (Oct. 13, 1993) (Valente, J.); Annotation, Uninsured and Underinsured Motorist Coverage: Validity, Construction, and Effect of Policy Provision Purporting to Reduce Coverage By Amount Paid or Payable Under Workers' Compensation Law, 31 A.L.R.5th 116, § 5[b] (1995) (collecting cases).[2] The Court finds the reasoning of those cases unpersuasive where it allows an insured to recover more than he or she would have recovered had the uninsured motorist actually

---

[2] Several of the courts denying an offset have done so only where an offset for workers' compensation benefits would render the insured without full compensation for his or her damages. *See, e.g.*, *Luedke v. United Fire & Cas. Co.*, 561 N.W.2d 206, 207–09 (Neb. 1997) (disallowing offset where insured's total recovery, even without offset, was less than insured's overall damages from accident); *Ferguson v. State Farm Mut. Auto. Ins. Co.*, 198 S.E.2d 522, 523–24 (S.C. 1973) (same). Under those circumstances, an offset would be inconsistent with the underlying purpose of the Act because the offset would not place the insured in the same position she would be in had the uninsured motorist purchased insurance coverage.

purchased insurance.[3] This places a plaintiff in a better position than if his or her accident was caused by an uninsured driver. It also places an accident victim injured by an uninsured motorist in a better position than a work injury victim,[4] and is contrary to the

---

[3] Plaintiff also argues that because she had paid a premium for her uninsured motorist coverage, she is entitled to the full benefit of her policy despite any recovery from other forms of insurance. Plaintiff, however, paid Defendant to assume only the risk that she might not be able to fully recover in an accident with an uninsured motorist. Defendant is therefore obligated to pay Plaintiff the amount she failed to recover from other sources, up to the limits of its Policy. This provides Plaintiff the full benefit of the UM provision of the Policy and full compensation for her damages.

[4] The Court notes that if the uninsured motorist had had coverage here, Vermont workers' compensation law would allow a lien on an employee's recovery from other sources where the lien prevents "double recovery." 21 V.S.A. § 624(e). Hence, if Plaintiff had received an $80,000 recovery from the uninsured motorist's hypothetical liability policy, $15,259.61 of that recovery would have gone to her employer or workers' compensation carrier, leaving her with a total recovery of $80,000. There is no indication that the Legislature intended individuals who

general proposition that an injured party is allowed only one recovery. *See* W. Page Keeton, et al., The Law of Torts § 48, at 330–32 (1984). Therefore, the Court holds that § 941(e) does not set forth the exclusive permissive offset under the Act and an offset of workers' compensation benefits is appropriate to the extent Plaintiff's workers' compensation would permit a double recovery. The United States District Court for the District of Vermont has reached a similar conclusion, holding that:

> [i]t is axiomatic that plaintiff may not receive double recovery for his injuries. If plaintiff were to collect both worker's compensation and UM benefits without comparing their total to plaintiff's total damages, plaintiff might receive compensation for the same injury twice. Together both the UM and worker's compensation payments may not add up to more than plaintiff's total damages.

*Brunet v. Am. Ins. Co.*, 660 F. Supp. 843, 849 (D. Vt. 1987). The Arizona Court of Appeals decision in *Geyer v. Reserve Insurance Company*, 447 P.2d 556 (Ariz. Ct. App. 1968), is also instructive. The Vermont Supreme Court cited *Geyer* in *Muir* for the proposition that a UM carrier must provide coverage for that portion of an insured's total judgment which remains unsatisfied by the insured's recovery from other sources. *Muir*, 147 Vt. at 594 (citing *Geyer*, 447 P.2d at 559). The *Geyer* Court noted, however, that its opinion was not "to be construed as permitting or tending to permit a 'double recovery' or windfall to the insured under separate coverages in excess of [the insured's] actual legal damages." *Geyer*, 447 P.2d at 559. These holdings support the Court's decision here to allow an offset and prevent a double recovery.

---

suffered damages in an accident with an uninsured motorist to receive a double recovery, while denying those individuals injured on the job this same opportunity.

Finally, Plaintiff argues that she is entitled to interest on her uninsured motorist payment. With respect to the undisputed $64,740.39 to which Plaintiff is entitled, interest accrued over a period of 46 days after the arbitration board announced its award and before Defendant remitted payment. At a legal rate of 12 percent, 9 V.S.A. § 41a(a); V.R.C.P. 69, total interest amounts to $976.41.[5] Defendant has not disputed Plaintiff's claim to this amount of interest, and Plaintiff's argument is consistent with Vermont law. *Webb v. U.S. Fidelity & Guar. Co.*, 158 Vt. 137, 144 (1992). Therefore, the Court awards Plaintiff $976.41 in interest, in addition to the amount Defendant remitted on November 8, 2004.

ORDER

For the foregoing reasons, Defendant's summary judgment motion is GRANTED; Plaintiff's summary judgment motion is GRANTED as to its interest claim and DENIED as to the remainder. Defendant is ORDERED to pay $976.41 in interest to Plaintiff.

SO ORDERED.

Dated at Middlebury, Vermont, Feb. 2nd, 2005.

_____/s/_____
Hon. Christina Reiss
Addison Superior Court

---

[5] The Court arrives at this figure by a simple interest calculation. *Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc.*, 149 Vt. 365, 369–70 (1988). The Court determined the per diem interest rate of a 12 percent annual interest (0.12/366 [2004 was a leap year]), multiplied this figure by the principal ($64,740.39), and then multiplied this result by the 46 days during which interest accrued.